IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JANE DOE,

      Plaintiff,

 v.

DEXTER COMMUNITY SCHOOLS,
CHRISTOPHER TIMMIS,
Superintendent, in his Official and Individual Capacities;
WILLIAM MORAN,
Principal, in his Official and Individual Capacities;
CRAIG RAFAIL,
Counselor, in his Official and Individual Capacities;
OTHER UNIDENTIFIED ROES,
 in their Official and Individual Capacities,

      Defendants,

Hon. _____

Case No: _____

| Karen Truszkowski (P56929) | Julie A. Jacot (P43443) |
|---|---|
| Temperance Legal Group PLLC | Jacot Law PLLC |
| 503 Mall Court #131 | 1044 N. Irish Road, Ste A |
| Lansing, MI  48912 | Davison, MI  48423 |
| 844-534-2560 phone | 810-653-9526 phone |
| 800-531-6527 fax | 810-658-2444 fax |
| Karen@temperancelegalgroup.com | juliejacotlaw@gmail.com |

## **COMPLAINT AND JURY DEMAND**

     Plaintiff, Jane Doe, through her attorneys, Karen Truszkowski and Julie A. Jacot, hereby files the following complaint against Defendants as captioned above.

### **I. JURISDICTION AND VENUE**

     1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

1

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. This Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a), as more fully set forth herein.

5. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

7. At all material times Plaintiff was a resident of Washtenaw County, State of Michigan.

8. At the time of events complained of herein, Plaintiff was a student attending DEXTER COMMUNITY SCHOOLS ("School District").

9. At the time of events complained of herein, "TL" was a student attending Defendant School District.[1]

10. At the time of events complained of herein, "DC" was a student attending Defendant School District.[2]

11. The Defendant School District is a public educational institution located in Washtenaw County, State of Michigan.

12. At all material times, Defendant CHRISTOPHER TIMMIS ("Timmis"), in his official and individual capacities, worked within Washtenaw County, State of Michigan.

13. During all material times, "Timmis" was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

14. At all material times, Defendant WILLIAM MORAN ("Moran"), in his official and individual capacities, worked within Washtenaw County, State of Michigan.

15. During all material times, "Moran" was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

16. At all material times, Defendant CRAIG RAFAIL ("Rafail"), in his official and individual capacities, worked within Washtenaw County, State of Michigan.

17. During all material times, Rafail was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

---

[1] TL is identified by his initials to protect the identity of the Plaintiff.

[2] DC is identified by his initials to protect the identity of the Plaintiff.

18. At all material times, Defendants "Unidentified Roes" in their official and individual capacities, worked within Washtenaw County, State of Michigan.

19. At all material times, "Unidentified Roes" were agents and/or employees of Defendant School District, acting or failing to act within the scope, course, and authority of their employment and their employer.

### III. APPLICABLE LAW AND POLICY

20. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

21. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

22. 34 C.F.R. § 106.8 (b) provides:

> …A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

23. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

24. In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

25. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and
> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669-76.

26. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## IV.  COMMON ALLEGATIONS

27. At all material times, the School District was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

28. The School District implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

29. The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

30. The School District is responsible for the acts and omissions of its employees.

31.  On or about April 5, 2013, during her school's spring break, Plaintiff, 13-years-old, was raped by "TL," a 16-year-old fellow student.   Upon information and belief, TL was a student in the Defendant School District.

32. Plaintiff did not report the rape to her parents or the police. A week or two after the assault, Plaintiff did confide in two friends, one of whom had an older sister who had "heard a rumor about it."

33. When school started up in the fall, Plaintiff began seeing School Counselor Rafail and told him about the rape. Rafail did not notify Plaintiff's parents, his superiors, or police authorities.

34. On or about the evening of July 4, 2014, Plaintiff, 15-years-old, went to a party, drank alcoholic beverages, and became intoxicated. Plaintiff was repeatedly raped by DC, a fellow student. DC was two weeks from his 18th birthday.

35. Plaintiff told one friend what had happened. Plaintiff was embarrassed and unsure of what to do. As a result, she did not report the incident to her parents, police, or anyone else at that time.

36. Upon returning to school in the fall of 2014, Plaintiff met again with Rafail and told him about this second rape. Plaintiff told Rafail that she had suicidal ideations, that she was cutting herself, that she was struggling in school and that her grades were slipping.

37. Rafail again failed to notify Plaintiff's parents, his superiors, or the police.

38. Rafail did not inform Plaintiff of her Title IX rights and he failed to refer Plaintiff for counseling and support services.

39. Plaintiff suffered from a learning disability and was under an IEP[3] until seventh grade. Rafail was aware that Plaintiff's academic performance was suffering yet did not offer Plaintiff any type of assistance with her schooling or advise her that the IEP could be reinstated.

---

[3] Individualized Education Program pursuant to the Individuals with Disabilities Education Act.

6

40. Plaintiff met with Rafail approximately two times a week over the course of her four years at the School District.  Rather than taking appropriate action, ensuring Plaintiff's safety, and the safety of other students, Rafail instead inappropriately inserted himself into Plaintiff's personal life. Rafail gave Plaintiff his personal cell phone number, exchanged text messages with her, and manipulated himself into the position of Plaintiff's sole confidant.

41. Plaintiff [4]"routinely told [Rafail] that she loved him, and she repeatedly addressed [Rafail] as "best friend" or "bestie." (Exhibit A, Pg. 11.)  Further, Rafail "appears to have taken pleasure from being [Plaintiff's] sole confidant (even bragging that [Plaintiff] would express her love for him on a regular basis and refer to him as her "dad")." ( Exhibit A, P. 3.)

42. Throughout the school year, Plaintiff had to endure seeing DC, as well as his family members, at school and in the community.

43. Word got around about the rapes and, throughout Plaintiff's remaining school years, she was subjected to chronic harassment relating to the rapes: online, in person at school, and in the community.  Rumors circulated that the Plaintiff was pregnant and that the rapes were consensual acts.  One of the harassers told Plaintiff that they wished Plaintiff was dead.  While at track practice, one harasser told Plaintiff "you would know about it because you know how to keep your legs up (in the air)."   Plaintiff was told by a fellow female student, "I can't believe you let that happen to you.  You should kill yourself."  Plaintiff informed Rafail about the harassment but he did not address it.

44.  The bullying and harassment became so bad that Plaintiff herself contacted the police but was told nothing could be done without direct threats of physical harm.

---

[4] Plaintiff is referred to as "Student#1" throughout Exhibit A.

7

45. Plaintiff became even more withdrawn and depressed. Plaintiff again told Rafail that she was cutting herself and contemplated suicide, yet Rafail still did not notify any other school personnel or Plaintiff's parents and did not refer Plaintiff for therapeutic or crisis counseling.

46. The School District had no measure in place to supervise or monitor Rafail's work or to ensure that Rafail followed school policy and the law.

47. The School District and Rafail failed to notify Plaintiff or her parents of who the School District Title IX Coordinator was, failed to explain to Plaintiff or her parents Plaintiff's right's and entitlements under Title IX, failed to offer therapeutic or crisis counseling services, failed to offer Plaintiff academic assistance, failed to notify police of the rapes, failed to take any measure to provide Plaintiff with a safe school environment, and failed to take any measures whatsoever to address or stop the chronic and ongoing harassment.

48. By the School District's own admission, the School District acknowledged that Rafail's failure to report Plaintiff's disclosures to Rafail was a violation of "State law, Board policy, District practice, and basic common sense." (Exhibit A, P. 2.)

49. By the School District's own admission, Rafail's failure to report "…allowed an alleged rapist unfettered access to potential student victims, denied Student #1's parents the opportunity to take an active role in directing their daughter's recovery, prevented the District from investigating the incident and acting to protect District students, and prevented both Student #1's parents and the administration from providing Student #1 the skills and information necessary to avoid a second and subsequent rape." (Exhibit A, P. 2 and 3).

50. On December 11, 2017, the School District issued tenure charges against Defendant Rafail, alleging the following instances of misconduct, unprofessional conduct, and insubordination in relationship to Plaintiff:

    a. Failing to report one or more rapes;

    b. Failing to properly fulfill his duties as a member of the Dexter staff;

    c. Interfering with Student #1's parental rights;

    d. Engaging in one or more acts of insubordination;

    e. Failing to properly protect one or more students;

    f. Engaging in an improper student relationship;

    g. Involving himself inappropriately in a student's life;

    h. Interfering in an investigation;

    i. Placing his own interests ahead of the interests of the school and/or one or more students; and

    j. Making false statements when under a directive to be truthful and forthright.

(Exhibit A, P. 5-6).

51. After the tenure charges were issued on December 11, 2017, Rafail's employment with the Defendant School District was terminated in 2018.

52. Plaintiff suffered sex-based harassment that was severe, pervasive, and objectively offensive.

53. The sex-based harassment deprived Plaintiff of access to the educational opportunities or benefits of the school.

54. School District officials had the authority to take remedial action to correct the sex-based harassment.

55. The Defendants responded with deliberate indifference to the sex-based harassment.

56. Plaintiff was denied a safe school environment, became afraid and anxious to attend school, was denied a normal childhood, was denied a normal school environment, and was denied her right to enjoyment of and an opportunity for a free and appropriate public education.

57. As a direct and proximate result of the unsafe and harassing educational environment created by the Defendants' deliberately indifferent response to the physical assaults and harassment, as well as violations of her Fourteenth Amendment rights, Plaintiff has suffered and continues to suffer psychological damage, severe emotional distress, loss of standing in her community, and damage to her reputation.

58. Plaintiff has also been deprived of a normal childhood education due to the Defendants' conduct and the resulting educational environment.

59. Plaintiff has also been damaged by missed educational opportunities and her future earnings capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

## COUNT I
## VIOLATION OF TITLE IX
## AS TO DEXTER COMMUNITY SCHOOLS
## (20 U.S.C. § 1681, *et seq)*
### The School's Deliberate Indifference to Sexual Harassment

Paragraphs 1through 59 are incorporated by reference as if stated in full herein

60. The physical assaults and subsequent harassment articulated in the Plaintiff's common allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational benefits provided by the school.

61. The Defendant School District created and/or subjected the Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 (a) ("Title IX"), because

    a) Plaintiff was a member of a protected class

    b) she was subjected to harassment in the form of physical assaults and harassment by other students;

    c) she was subjected to harassment based on her sex; and

    d) she was subjected to a hostile educational environment created by the School District's lack of effective and appropriate policies and procedures to properly notify, prevent, investigate, and address sexual assault and harassment.

62. The Defendants had knowledge, or should have known, of the physical assaults and the resulting harassment of Plaintiff created by Defendants' failure to protect Plaintiff in a timely manner and consistent with its own policies and state and federal law.

63. The Defendants' failure to promptly and appropriately respond to the assaults and harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the School District's education program in violation of Title IX.

64. The Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of assaults and harassment and instead acted with deliberate indifference toward Plaintiff.

65. The Defendant School District persisted in its actions and inaction even after it had actual knowledge, or should have known, of the harm suffered by Plaintiff.

66. The Defendant School District engaged in a pattern and practice of behavior designed to fail in enforcement of its own policies, thus resulting in failure to follow the law.

67. This policy constitutes disparate treatment of female students and has a disparate impact on female students.

68. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress, psychological damages, physical manifestation of psychological distress, humiliation, loss of self-esteem, loss of enjoyment of life, loss of earnings, loss of earning capacity, and past and ongoing medical expenses.

## COUNT II
## VIOLATION OF TITLE IX
## AS TO DEFENDANT DEXTER COMMUNITY SCHOOLS
## (20 U.S.C. §, *et seq*)
## (Retaliation by Withholding Protection Otherwise Conferred by Title IX)

Paragraphs 1 through 68 are incorporated by reference as if stated in full herein.

69. Fellow students and other unknown parties harassed Plaintiff upon hearing the rumors and gossip about the rapes. Plaintiff reported this harassment to Rafail who failed to intervene to stop it.

70. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress, psychological damages, physical manifestation of psychological distress, humiliation, loss of self-esteem, loss of enjoyment of life, loss of earnings, loss of earning capacity, and past and ongoing medical expenses.

## COUNT III
## 1983 VIOLATION OF EQUAL PROTECTION AS TO
## DEFEDANTS DEXTER COMMUNITY SCHOOLS,
## TIMMIS, AND MORAN
## (42 U.S.C. § 1983)

Paragraphs 1 through 70 are hereby incorporated by reference as if set forth in full herein.

71. Under the Fourteenth Amendment, Plaintiff had the right as a public-school student to the Equal Protection of Laws.

72. Defendants were at all relevant times policymakers and administrators, acting under color of law.

73. Defendants subjected Plaintiff to violations of her right to Equal Protection of Laws by: failing to adequately train and supervise employees and staff and manifesting deliberate indifference to Plaintiff's right to equal protection of laws.

74. The School District had and continues to have unconstitutional customs and policies of:

a) failing to adequately train and failing to adequately supervise School District employees with regard to maintaining, preserving, and protecting students from violations of their right to equal protection of laws.

b): failing to adequately train and failing to adequately supervise school counselors with regard to counseling students who have been sexually assaulted, failing to adequately train, supervise and oversee school counselors regarding notification to appropriate school personnel, parents, and police authorities of said students, and failing to adequately train, supervise and oversee school counselors to ensure that all school policies and the law were followed regarding said students who have been sexually assaulted.

75. Sexual violence in schools has been on the rise for years and schools have been warned of this epidemic and its disparate impact on female students.[5]

76. Defendants' should have foreseen that employees, especially school counselors, might be approached by a female student who had been sexually harassed and that failure to adequately train and failure to adequately supervise employees, especially school counselors, regarding sexual harassment and its victims would result in the victim not

---

[5] US Department of Education Title IX Resource Guide, April 2015, referring to Questions and Answers on Title IX and Sexual Violence (April 29, 2014) and Dear Colleague Letter: Sexual Violence (April 4, 2011). Also See US Department of Justice Facts and Statistics website article, "Raising Awareness About Sexual Abuse."

receiving proper protections as required by law and school policy and would subject the victim to further emotional damage and physical manifestations of said emotional damage.

77. On information and belief, the School District has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other School District students.

78. The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

79. The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

80. Defendants actions and lack of actions were the proximate cause of Plaintiff's emotional distress, psychological damages, physical manifestation of psychological distress, humiliation, loss of self-esteem, loss of enjoyment of life, loss of earnings, loss of earning capacity, and past and ongoing medical expenses, resulting from Defendants' deliberate indifference to Plaintiff's right to equal protection under the Fourteenth Amendment.

**COUNT IV**
**MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE**
**AS TO RESPONSE TO ASSAULT**
**AS TO DEFENDANT DEXTER COMMUNITY SCHOOLS**
**(42 U.S.S § 1983)**

Paragraphs 1 through 80 are hereby incorporated by reference as if set forth in full herein.

81. Defendant's School District employees were state actors working for Dexter Community Schools, a federal funded school system.

82. Defendant's employees acted under color of law when refusing/failing to respond to Plaintiff's student-on-student sexual assaults and harassment.

83. Defendant failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

84. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

85. Defendant should have known that its response to sexual assault allegations must comply with federal law.

86. Defendant violated Plaintiff's right to equal access by:

a) Failing to take steps to protect Plaintiff as necessary.

b) Treating Plaintiff with deliberate indifference.

c) Failing to adequately train and failing to adequately supervise School District administrators, officials, school counselors, other employees and staff as to Federal law.

d) Failing to supervise school counselors, especially as said counseling related to sexual assault victims.

e) Subjecting Plaintiff to inappropriate and unprofessional counseling and conduct.

87. Defendant should have foreseen that employees, especially school counselors, might be approached by a female student who had been sexually harassed and that failure to adequately train and failure to adequately supervise employees, especially school counselors, regarding sexual harassment and its victims would result in the victim not receiving proper protections as required by law and school policy and would subject the victim to further emotional damage and physical manifestations of said emotional damage.

88. These policies and/or practices constitute disparate treatment of females and had a disparate impact on female students.

89. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress, psychological damages, physical manifestation of psychological distress, humiliation, loss of self-esteem, loss of enjoyment of life, loss of earnings, loss of earning capacity, and past and ongoing medical expenses.

## COUNT V – PENDENT STATE CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AS TO DEFENDANT RAFAIL

Paragraphs 1 through 89 are hereby incorporated by reference as if set forth in full herein.

90. Rafail deliberately chose to not report the first sexual assault. But for Rafail's conduct, the second rape may not have occurred.

91. Plaintiff failed to report the second sexual assault.

92. Plaintiff's failed to report Plaintiff's suicidal ideations and self-harming conduct.

93. Rafail failed to refer Plaintiff for sexual assault counseling or crisis intervention thereby depriving Plaintiff of crucial specialized therapy and coping techniques.

94. Rafail deliberately denigrated Plaintiff's boyfriend, interfering in the relationship and causing Plaintiff to discontinue the relationship.

95. Rafail abused his counseling position, cultivating an inappropriate relationship with Plaintiff, a minor sexual assault victim in a fragile emotional state.

96. Defendant failed to notify Plaintiff of her Title IX rights, failed to provide any protections or accommodations.

97. Defendant's conduct was extreme and outrageous.

98. Defendant's conduct was intentional or reckless.

99. Defendant's conduct caused Plaintiff to suffer severe emotional distress accompanied by physical manifestations of said distress, and other harms as stated above and to be established at trial.

### COUNT VI – PENDENT STATE CLAIM
### VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN
### CIVIL RIGHTS ACT (ACT 453 OF 1976)

Paragraphs 1 through 99 are hereby incorporated by reference as if set forth in full herein.

100. Defendant School District was, at all relevant times, a place of public accommodation, a public service, and an educational institution as defined in Michigan's Elliott-Larsen Civil Rights Act ("the Act").

101. Defendant Rafail was, at all relevant times, person as defined in the Act, and is an agent of Defendant School District.

102. Defendants violated the Act and deprived Jane Doe of her civil rights by, among other things:

   a) Failing to take steps to protect Plaintiff as necessary.

   b) Treating Plaintiff with deliberate indifference.

   c) Failing to adequately train School District administrators, officials, school counselors, other employees and staff as to Federal law, Michigan law, and School District policies and procedures relating to Title IX and/or to sexual harassment.

   d) Failing to supervise school counselors, especially as said counseling related to sexual assault victims.

   e) Subjecting Plaintiff to inappropriate and unprofessional counseling and conduct.

103. Defendant should have foreseen that employees, especially school counselors, might be approached by a female student who had been sexually harassed and that failure to adequately

train and failure to adequately supervise employees, especially school counselors, regarding sexual harassment and its victims would result in the victim not receiving proper protections as required by law and school policy and would subject the victim to further emotional damage and physical manifestations of said emotional damage.

104. Defendants actions and/or inaction and policies and/or practices constitute disparate treatment of females and had a disparate impact on female students.

105. Defendants actions and/or inaction and policies and/or practices denied Plaintiff of the full benefit of the School District's educational program and full and equal access to the use and privileges of public accommodations, public service and educational opportunity.

106. Defendants proximately caused Plaintiff emotional distress, psychological damages, physical manifestation of psychological distress, humiliation, loss of self-esteem, loss of enjoyment of life, loss of earnings, loss of earning capacity, and past and ongoing medical expenses.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

- A. Compensatory damages for Plaintiff's psychological and emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, humiliation, loss of enjoyment of life, prevention of obtaining full enjoyment of life, loss of earnings past, present, and future, loss of earning capacity, past, present, and future expenses for medical and psychological treatment and therapy;
- B. Punitive damages;
- C. Injunctive relief requiring Defendants to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in all its programs and

activities; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D. Statutory interest;

E. Costs;

## JURY DEMAND

Now comes Plaintiff, Jane Doe, through her attorneys, Karen Truszkowski and Julie A. Jacot, and demands a trial by jury.

Dated: May 7, 2018

/s/ *Karen Truszkowski*
Karen Truszkowski (P56929)
Temperance Legal Group PLLC
530 Mall Court #131
Lansing, MI 48912
517.235.3053 phone / 517.913.6209 fax
Karen@temperancelegalgroup.com
Attorney for Plaintiff

*/s/ Julie A. Jacot*
Julie A. Jacot (P43443)
Jacot Law PLLC
1044 N. Irish Road, Ste A
Davison, MI 48423
810-653-9526 phone / 810-653-2444 fax
juliejacotlaw@gmail.com
Attorney for Plaintiff